# 15-2702-cv

IN THE

## United States Court of Appeals

### FOR THE SECOND CIRCUIT



JESMAIN SIDDIQUA,

*Plaintiff-Appellant,*

*v.*

NEW YORK STATE DEPARTMENT OF HEALTH,

*Defendant-Appellee.*

_____

*On Appeal from the United States District Court*
*for the Northern District of New York (Syracuse)*

## BRIEF FOR PLAINTIFF-APPELLANT

Meredith A. Moriarity, Esq.
John J. Hoke, Esq.
SMITH HOKE, PLLC
*Attorneys for Plaintiff-Appellant*
7 Southwoods Boulevard, Suite 103
Albany, New York 12211
518-489-5600

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................iv

STATEMENT OF APPELLATE JURISDICTION ...................................1

STATEMENT OF ISSUES PRESENTED..............................................1

STATEMENT OF THE CASE.............................................................2

FACTS ........................................................................................2

SUMMARY OF THE ARGUMENT ....................................................5

ARGUMENT .................................................................................6

I.    THE DISTRICT COURT ERRED IN FAILING TO HOLD THAT, UNDER THE CBA, THE ARBITRATOR HAD NO POWER TO RULE ON FMLA CLAIMS, AND THEREFORE, THE ARBITRATOR'S DECISION HAD NO PRECLUSIVE EFFECT ........................................................................................6

    A. THE DISTRICT COURT ERRED IN NOT CONDUCTING AN ANALYSIS AS TO WHETHER THE CBA GAVE THE ARBITRATOR THE POWER TO RULE ON FMLA CLAIMS..................7

    B. THE DISTRICT COURT SHOULD HAVE FOUND THAT BECAUSE THE CBA DID NOT COVER STATUTORY CLAIMS, THE ARBITRATION DECISION HAD NO PRECLUSIVE EFFECT..............................................................10

II.    THE DOCTRINES OF RES JUDICATA AND COLLATERAL ESTOPPEL DO NOT BAR APPELLANT FROM EXERCISING HER FMLA RIGHTS IN COURT ................................................16

    A. THE DOCTRINE OF RES JUDICATA IS NOT APPLICABLE ................16

      1. The Arbitrator Did Not Demonstrate a Familiarity with the FMLA and Had No Power to Rule on a Statutory FMLA Claim ...........17

      2. The Arbitral Standards Were Less Protective Than Those in Federal Court .............................................................18

     3. The Arbitrator Would Not Have Been Able to Offer Siddiqua Adequate Relief ..................................................................21

  B. THE DOCTRINE OF COLLATERAL ESTOPPEL DOES NOT PRECLUDE SIDDIQUA FROM FILING HER CLAIMS IN FEDERAL COURT..................................................................22

III.  THE NEW YORK SUPREME COURT NEVER DECIDED THE ISSUE OF WHETHER SIDDIQUA'S FMLA RIGHTS WERE VIOLATED ..................................................................25

IV.  THE DISTRICT COURT ERRED IN NEVER ADDRESSING APPELLANT'S LEGAL ARGUMENTS..................................................26

CONCLUSION ..................................................................28

CERTIFICATE OF COMPLIANCE..................................................29

# TABLE OF AUTHORITIES

## <u>Cases</u>

*14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009) ................................ 13-15, 24-25

*Achille v. Chestnut Ridge Transp., Inc.*, 584 Fed. Appx. 20 (2d Cir. 2014) .......... 19

*Alexander v. Gardner-Denver*, 415 U.S. 36 (1974) ..................................... 9-14, 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................... 6, 16

*Atchison T. & S.F.R. Co. v. Buell*, 480 U.S. 557 (1987) ......................................... 12

*Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728 (1981) ............................ 12

*Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343 (2d. Cir. 2000) ................... 26

*Benjamin v. Traffic Exec. Ass'n Eastern R.R.*, 869 F.2d 107 (2d Cir. 1989) .... 22-24

*Brown v. Felsen*, 442 U.S. 127 (1979) .............................................. 18, 21

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ................................. 6

*Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126 (2d Cir. 2015) ................... 16

*Coppinger v. Metro-North Commuter Railroad*,
861 F.2d 33 (2d Cir. 1988) ......................................................... 15-17, 21

*Gilmer v. Interstate/ Johnson Lane Corp.*, 500 U.S. 20 (1991) ............. 9, 12-15, 23

*Knox v. Town of Southeast*, 599 Fed. Appx. 411 (2d Cir. 2015) .......................... 19

*McDonnell Douglas v. Green*, 411 U.S. 792 (1973) ......................................... 19-20

*McDonald v. West Branch*, 466 U.S. 284 (1984) .................................................... 12

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*,
473 U.S. 614 (1985) .......................................................................... 7, 9-10

*Potenza v. City of New York*, 365 F.3d 165 (2d Cir. 2004) ....................................19

*Seet v. Sheahan*, 235 F.3d 80 (2d Cir. 2000) ...............................................6

*Serafin v. State of Conn. Dept. of Mental Health and Addiction Serv.*,
2005 U.S. Dist. LEXIS 3603 (D. Ct. March 9, 2005) ................................8

*Siddiqua v. New York State*,
2015 U.S. Dist. LEXIS 96488 (July 23, 2015 N.D.N.Y.) ..........................2

*Wanamaker v. Westport Bd. Of Educ.*, 899 F.Supp.2d 193 (D. Ct. 2012) ..............19

*Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*,
103 F.3d 9 (2d Cir. 1997)..........................................................................26

## Statutes

29 C.F.R 825 ...............................................................................................20

29 C.F.R. 825.400(c)..................................................................................22

9 U.S.C. §10(a)(4) .....................................................................................26

28 U.S.C. §1291 ...........................................................................................1

28 U.S.C. §1331 ...........................................................................................1

29 U.S.C. §2601 .........................................................................................20

29 U.S.C. §2617 ...........................................................................................1

Federal Rules of Appellate Procedure 4(a)(1)(A)................................1, 4

Federal Rules of Civil Procedure 12(b)(6) ...................................1-2, 5-6

## STATEMENT OF APPELLATE JURISDICTION

On April 3, 2014, Plaintiff Jesmain Siddiqua commenced an action under the Family Medical Leave Act of 1993, 29 U.S.C. §2617 (hereinafter "FMLA"), alleging that her employer, the New York State Department of Health (hereinafter "the State"), interfered with her right to FMLA leave and retaliated against her for taking such leave. The District Court had subject-matter jurisdiction under 28 U.S.C. §1331.

Siddiqua appeals the dismissal of her complaint for failure to state a cause of action pursuant to Federal Rules of Civil Procedure 12(b)(6). This Court has jurisdiction over the appeal pursuant to 28 U.S.C. §1291. The District Court issued a Memorandum Decision and Order dismissing the complaint on July 23, 2015, and this appeal was timely filed pursuant to Federal Rules of Appellate Procedure 4(a)(1)(A) on August 21, 2015.

## STATEMENT OF ISSUES PRESENTED

1. Where FMLA leave was relied upon during arbitration, but the arbitrator had no power under the Collective Bargaining Agreement to determine statutory claims, can the arbitration decision preclude the plaintiff from pursuing FMLA claims in federal court?

1

## STATEMENT OF THE CASE

This case involves a plaintiff who had been terminated from her position at the State after she was absent from work for several weeks. The matter went to arbitration pursuant to her Collective Bargaining Agreement ("CBA"), where Siddiqua argued that she had provided her employer with proper FMLA leave notice. The Arbitrator found that the discipline was proper, and Siddiqua brought this action in federal district court, arguing that the State had interfered with her FMLA leave and that the State had retaliated against her for invoking her FMLA rights.

The State brought a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), arguing that the arbitration decision precluded Siddiqua from pursuing her claim in federal court. On July 23, 2015, the Honorable Glenn T. Suddaby of the Northern District of New York granted the State's motion to dismiss. *See Siddiqua v. New York State*, 2015 U.S. Dist. LEXIS 96488 (July 23, 2015 N.D.N.Y.), Appendix (hereinafter "A.") 89.

## FACTS

Siddiqua was employed by the State as an Information Technology Specialist for five years and was a member of the Public Employees Federation ("PEF"). A. 5 ¶ 6. In December of 2010, she discovered that her mother, who lived in Bangladesh, had stomach cancer and was gravely ill. A. 6 ¶7. She

notified Pamela Morini, Senior Personnel Administrator, of her need to take leave under FMLA in order to take care of her mother. A. 6 ¶8. At that time, it was noted that her leave would commence sometime in the future in order to coordinate her schedule with other family members. A. 6 ¶9. After her leave was approved, Siddiqua suffered her own medical issues, and had to delay her trip to Bangladesh. A. 6 ¶11.

On March 28, 2011, Siddiqua learned that her mother's condition was worsening and she was in immediate need of Siddiqua's help and support. A. 6 ¶12. Relying on her FMLA approval from December, 2010, which indicated that her leave would commence at some point in the future, she made plans to travel to Bangladesh in order to provide comfort and care to her mother. A. 6 ¶13. During that week, Siddiqua orally advised her supervisor, Michael Pettit, of her intention to take FMLA leave during the coming weeks. A. 6 ¶ 14. Mr. Pettit never indicated to Siddiqua that this was not approved or that she should refrain from taking FMLA leave. A. 6 ¶14. She also emailed Mr. Petit, advising him that she would be absent from April 4, 2011 through May 20, 2011. A. 6 ¶15.

On April 4, 2011, as she had indicated to Mr. Pettit, Siddiqua flew to Bangladesh to care for her mother, consistent with her previous FMLA request and approval. A. 7 ¶16. When she returned, she provided Ms. Morini with the FMLA

3

medical certification confirming her mother's medical condition, as she had previously been instructed.  A. 7 ¶17.

Notwithstanding her compliance with Ms. Morini's instructions, on June 24, 2011, the State served Siddiqua with a Notice of Discipline alleging that she was absent from work without authorization for 35 days, and that the State was seeking her termination as a result.  A. 7 ¶18.  As per the CBA between her union and the State, Siddiqua participated in a Disciplinary Grievance Arbitration.  On April 5, 2012, the arbitrator held that Siddiqua was absent from work without authorization for 35 days and that the termination was valid.  A. 64.

Siddiqua filed a motion in New York State Supreme Court, requesting review of the arbitration award.  A. 24.  The court denied the motion because it was not timely served. A. 28.

Siddiqua commenced this action on April 5, 2014, asserting claims for interference and retaliation under the FMLA.  The State filed a motion to dismiss, arguing that her claims are barred by the doctrines of res judicata and collateral estoppel.  On July 23, 2015, Honorable Glenn T. Suddaby of the Northern District of New York granted the State's motion.  A. 89.  This appeal was timely filed pursuant to Federal Rules of Appellate Procedure 4(a)(1)(A) on August 21, 2015.

## SUMMARY OF THE ARGUMENT

The district court erred in dismissing the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) because there was a question of fact as to whether the arbitrator's award could preclude Siddiqua from pursuing her FMLA claims in court. Although the arbitrator referred to FMLA leave in his decision, the CBA did not give the arbitrator the power to rule on any statutory claims. The district court failed to even address this issue, much less acknowledge the fact that the question of whether an arbitrator has authority to address statutory claims is a theme running through all of the controlling case law.

In determining whether a previous arbitration has preclusive effect, the first question for a court to decide is whether the parties agreed to arbitrate the issue. The parties here did not. Because the arbitrator did not have authority to decide FMLA statutory claims, the standards the arbitrator used were not identical to the protections she would have received in federal court, and the relief available in federal court exceeded the relief enumerated in the CBA, the doctrines of res judicata and collateral estoppel do not preclude Siddiqua from bringing her claims in federal court.

Additionally, the issue of whether Siddiqua's FMLA rights were violated was never decided by the New York State Supreme Court. There, Siddiqua asked the court to review the arbitrator's award. The court decided the case on a

procedural issue, and held that the interests of justice did not require the waiver of untimely service. Because it addressed a different issue, using a different standard of review, it is not binding on this court.

Therefore, the arbitrator's award has no preclusive effect on this matter. The district court erred in granting the motion to dismiss, and its order should be reversed.

## ARGUMENT

Because the district court dismissed the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must review the decision *de novo*, "construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). To survive a motion to dismiss, a plaintiff must simply present "factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal is inappropriate unless it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Seet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000).

## I. THE DISTRICT COURT ERRED IN FAILING TO HOLD THAT, UNDER THE CBA, THE ARBITRATOR HAD NO POWER TO RULE ON FMLA CLAIMS, AND THEREFORE, THE ARBITRATOR'S DECISION HAD NO PRECLUSIVE EFFECT.

**A.  THE DISTRICT COURT ERRED IN NOT CONDUCTING AN ANALYSIS AS TO WHETHER THE CBA GAVE THE ARBITRATOR THE POWER TO RULE ON FMLA CLAIMS.**

The district court erred in neglecting to make a determination on the issue of whether the CBA covered statutory claims.  In *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614 (1985), the parties' sales agreement contained a clause directing all disputes that related to certain articles within the contract to be settled by international arbitration.  *Id.* at 618.  The litigation centered on the question of whether federal anti-trust claims related to those articles.  In determining that they were, the court conducted a two-part analysis.  "[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute."  *Id.* at 626.  Once it had found that the parties had, in fact, agreed to arbitrate anti-trust claims, the court examined whether any other legal constraints, such as concerns of international comity and the need for predictability in the international commercial system, prevented arbitration of the claims.  *Id.* at 628-29.  The court found that those points were not valid, and held that the agreement to arbitrate was enforceable.  *Id.* at 640.

Thus, the first question a court must decide is whether the parties actually agreed to submit their claims to arbitration.  It is only after that question is answered in the affirmative that an analysis should continue.  *Id.* at 628 ("Having made the bargain to arbitrate, the party should be held to it unless Congress itself

7

has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue. Nothing, in the meantime, prevents a party from excluding statutory claims from the scope of an agreement to arbitrate."); *see also Serafin v. State of Conn. Dept. of Mental Health and Addiction Serv.*, 2005 U.S. Dist. LEXIS 3603 *22 (D. Ct. March 9, 2005).

Here, the CBA excluded from arbitration all claims outside of the terms of the agreement. In defining a "contract grievance," the CBA states that:

> [o]ther disputes which do not involve the interpretation, application, or claimed violation of a specific term or provision of this Agreement, including matters as to which other means of resolution are provided or foreclosed by this Agreement, or by statute or administrative procedures applicable to the State, shall not be considered contract grievances.

A. 75. No specific terms or provisions in the agreement mention the FMLA. Article 34.1 of the CBA states that a Disciplinary Arbitrator only has the power to "render determinations of guilt or innocence and the appropriateness of proposed penalties, and shall have the authority to resolve a claimed failure to follow the procedural provisions of this Article." A. 72. No other powers are given. Grievance Arbitrators are similarly limited:

> Arbitrators shall have no power to add to, subtract from or modify the terms or provisions of this Agreement. They shall confine their decision and award solely to the application and/or interpretation of this Agreement . . . Arbitrators shall confine themselves to the precise issue or issues submitted for arbitration and shall have no authority to determine any other issues not so submitted to them nor shall they

make observations or declarations of opinion which are not essential in reaching the determination.

A. 77.

Thus, the CBA's arbitration clause does not apply to FMLA claims or any claims beyond the limited issues of guilt or innocence of specific infractions, and the suitability of discipline for those infractions. The parties to the CBA had agreed to arbitrate contract-based claims, not statutory ones. *See Gilmer v. Interstate/ Johnson Lane Corp.*, 500 U.S. 20, 35 (1991). Because Siddiqua's FMLA claim had a "legally-independent origin," *Alexander v. Gardner-Denver*, 415 U.S. 36, 52 (1974), and the parties did not agree to arbitrate FMLA claims, the first step in the *Mitsubishi* analysis is not satisfied.

Notably, while the arbitrator's decision referred frequently to the FMLA, he never actually attempted to rule on the issue of whether Siddiqua's FMLA rights were violated. The issues presented to him were (1) Whether Siddiqua was guilty of the charges of being absent from work without authorization and falsifying time records, (2) whether there just cause for discipline, and (3) whether there just cause for dismissal. A. 49. He discussed Siddiqua's defense that she gave adequate notice of FMLA leave, but his decision was limited to the contractual issue of whether Siddiqua was guilty of the charge of absence from work without authorization.

Even if there was a question as to whether FMLA claims may, in fact, have been covered by the CBA, the motion to dismiss should have been denied. The State, however, never even addressed this issue in its brief to the district court. The State never cited to the CBA or challenged Siddiqua's assertion that the parties had not agreed to arbitrate FMLA claims. A. 34-43. The district court did not conduct its own analysis, and chose to simply adopt the reasoning in the State's brief. A. 96. Therefore, the district court never addressed the issue of whether the parties had agreed to arbitrate FMLA claims. The fact that the district court ignored the two-step *Mitsubishi* analysis was clear error, and therefore its decision should be overturned.

## B. THE DISTRICT COURT SHOULD HAVE FOUND THAT BECAUSE THE CBA DID NOT COVER STATUTORY CLAIMS, THE ARBITRATION DECISION HAD NO PRECLUSIVE EFFECT.

The determination of whether the parties had agreed to the arbitration of a specific issue is essential in determining whether the arbitration has preclusive effect on future litigation. Two diverging lines of case law from the United States Supreme Court speak to this issue, the distinction being whether the arbitrator actually had authority under the arbitration agreement to rule on the statutory claims.

In *Alexander v. Gardner-Denver*, the Supreme Court specifically addressed the issue of whether a previous arbitration could preclude a party from asserting

10

statutory rights in federal court. 415 U.S. 36. There, the plaintiff was fired from his job and participated in an arbitration to determine whether the termination was justified. *Id.* at 42. His main defense was that he had been discriminated against due to his race, a direct violation of the collective bargaining agreement. *Id.* at 39, 42. The arbitrator held that there had been just cause for the termination, and the plaintiff subsequently filed a claim in federal court, alleging a violation of Title VII of the Civil Rights Act of 1964. *Id.* at 42-43. The Court faced the question of whether the statutory claim was precluded because the charges of racial discrimination had already been submitted to the arbitrator.

The court held that the arbitrator's finding that the employer had not discriminated did not preclude the plaintiff from bringing the statutory claim of discrimination in federal court.

> In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums.

*Id.* at 49-50.

The arbitrator's decision could not prevent an employee from raising his Title VII rights in court "regardless of whether certain contractual rights are similar

11

to, or duplicative of, the substantive rights secured by Title VII." *Id.* at 53-54; *see also Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 745 (1981) (noting that, even where the collective-bargaining agreement incorporates the statutory language, the arbitrator only has authority to resolve contractual rights, not statutory ones); *McDonald v. West Branch*, 466 U.S. 284 (1984) ("[B]ecause an arbitrator's authority derives solely from the contract . . . an arbitrator may not have the authority to enforce" a statute when that statute was not addressed by the arbitration agreement).

The reasoning behind this rule was explained in *Atchison T. & S.F.R. Co. v. Buell*, 480 U.S. 557, 564-65 (1987). "Although the analysis of the question under each statute is quite distinct, the theory running through these cases is that notwithstanding the strong policies encouraging arbitration, 'different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers." *Id.* (quoting *Barrentine*, 450 U.S.at 737).

*Gardner-Denver* and its progeny have not been overruled. It is true the *Gardner-Denver* Court did express, in dicta, some suspicion of arbitration. That mistrust has given way to greater acceptance of arbitration as a way to resolve disputes, however, its holding stands, as stated in *Gilmer v. Interstate/ Johnson Lane Corp.*, 500 U.S. 20, 34 n.5, 35 (1991).

12

*Gilmer* represents a second line of cases, which distinguish themselves from *Gardner-Denver*, but do not overrule it. There, the Court upheld an employment agreement that required the employee to submit all disputes, including ADEA claims, to arbitration instead of federal court. After discussing the ADEA's statutory history, the court emphasized the fact that it was not overruling *Gardner-Denver* because, unlike in *Gardner-Denver*, the ADEA claims were specifically included in the arbitration agreement.

> [*Gardner-Denver*] did not involve the issue of the enforceability of an agreement to arbitrate statutory claims. Rather, they involved the quite different issue whether the arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims. Since the employees there had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in those cases understandably was held not to preclude subsequent statutory actions.

*Id.* at 35.

Similarly, *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009) can be differentiated from *Gardner-Denver*. In *14 Penn Plaza*, the plaintiffs were subject to a collective bargaining agreement that required all union members to submit claims of discrimination to arbitration. *Id.* at 253. The plaintiffs brought to arbitration claims of age discrimination, but then withdrew them and filed a complaint in federal court. *Id.* The defendant filed a motion to compel arbitration of the age discrimination claims, and the court ruled in their favor. *Id.* at 264.

13

The court again emphasized the difference between the *Gardner-Denver* cases and the *Gilmer* cases, noting that the circumstances in *14 Penn Plaza* were similar to *Gilmer* and distinct from *Gardner-Denver*. *Id.* at 264. *14 Penn Plaza* and *Gilmer* both dealt with "whether a provision in a collective bargaining agreement that clearly and unmistakably requires union members to arbitrate claims under the [ADEA] . . . is enforceable." *Id.* The court distinguished itself from *Gardner-Denver* by stating that "*Gardner-Denver* and its progeny thus do not control the outcome where, as is the case here, the collective-bargaining agreement's arbitration provision expressly covers both statutory and contractual discrimination claims." *Id.* Like *Gilmer*, *14 Penn Plaza* explicitly noted that it was not overruling *Gardner-Denver*: "Because today's decision does not contract the holding of *Gardner-Denver*, we need not resolve the *stare decisis* concerns raised by the dissenting opinions." *Id.* at 264 n.8.

Here, Siddiqua's FMLA claims fall squarely into the *Gardner-Denver* line of cases. First, her claims, like those in *Gardner-Denver*, have a legally-independent basis. The CBA prohibited arbitrators from ruling on disputes that "do not involve the interpretation, application, or claimed violation of a specific term or provision" of the CBA, and thus the arbitrator had no power to hear statutory claims. A. 76, 77.

14

Second, *Gilmer* and *14 Penn Plaza* involved the ADEA, and not the FMLA. Those courts based their opinions, in part, on the language and legislative history of the ADEA. *See Gilmer*, 500 U.S. at 29 (noting the ADEA's flexible approach to the resolution of claims suggests that arbitration is appropriate), *14 Penn Plaza*, 556 U.S. at *258-59*. The same flexible language is not found in the FMLA.

Third, *Gilmer* and *14 Penn Plaza* dealt with the issue of whether an employee could be forced to arbitrate a claim under the ADEA. Here, the State is not attempting to have the case dismissed so that Siddiqua can be forced to have an arbitrator rule on her statutory claims. Instead, the State is attempting to argue that Siddiqua should be permanently barred from litigating her FMLA claims, even though she had no opportunity to bring those claims during the arbitration process. Dismissing this action would leave Plaintiff without a forum to have her FMLA claims heard. *See Coppinger v. Metro-North Commuter Railroad*, 861 F.2d 33, 36 (2d Cir. 1988) (holding where a statutory right is independent of a contractual right, and the statutory right was never decided, giving the arbitration preclusive effect would, essentially, be allowing the determination of one right to dictate the determination of another right).

Even if the Court finds the CBA's language to be ambiguous, there is a question of fact as to whether the arbitrator had power under the CBA to hear the statutory claims. If there is even a plausibility that Siddiqua's interpretation of the

CBA is correct, and the agreement did not give the arbitrator power to rule on FMLA claims, the motion to dismiss should have been denied. *See Iqbal*, 556 U.S. at 678.

## II. THE DOCTRINES OF RES JUDICATA AND COLLATERAL ESTOPPEL DO NOT BAR APPELLANT FROM EXERCISING HER FMLA RIGHTS IN COURT.

### A. THE DOCTRINE OF RES JUDICATA IS NOT APPLICABLE.

The doctrine of res judicata "bars the subsequent litigation of any claims that were or could have been raised in a prior action." *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 128 n.1 (2d Cir. 2015). The court laid out a four part test in *Coppinger v. Metro-North C. R.R.*, 861 F.2d 33 (1988), to determine when an arbitration should have res judicata effect. There, a former Metro-North employee was terminated after a urine sample tested positive for drugs. *Id.*at 34. He instituted an arbitration proceeding through the Railway Labor Act, but the arbitrator upheld his dismissal. *Id.* He then brought a claim in federal court, alleging that the urine sample infringed on his Fourth Amendment right to be free of unreasonable search and seizure. *Id.* at 34-35. The court looked to several factors, including (1) the arbitrator's lack of familiarity with the public policy considerations of the statute, (2) the arbitrator's lack of authority to apply statutory law under the collective bargaining agreement, (3) whether the arbitration procedures were less protective, and (4) whether the arbitration board had the

authority to grant the full range of relief offered by the statute, and concluded that the plaintiff should not be barred from bringing his claims in federal court. *Id.* at 38.

> **1.    The Arbitrator Did Not Demonstrate a Familiarity with the FMLA and Had No Power to Rule on a Statutory FMLA Claim.**

The *Coppinger* court first acknowledged that "'the specialized competence of arbitrators pertains primarily to the law of the shop, not the law of the land,'" while the final resolution of statutory claims "is squarely within the primary responsibility of the courts." *Id.* Second, the court noted that, even if the arbitrator was competent to interpret the statute, it did not have the power to do so under the collective bargaining agreement. *Id.*

> "[A]n arbitrator's power is both derived from, and limited by, the collective bargaining agreement." . . .The arbitrator's rule is circumscribed by his charge to construe and apply a negotiated agreement between an employer and its employees, and he has no commission to substitute his own notions of justice in the labor law arena.

*Id.* at 38-39.

Under this analysis, Siddiqua should not be precluded by the doctrine of res judicata.  First, the Arbitrator did not demonstrate any familiarity with the complexities of the FMLA.  While he referenced the FMLA throughout his decision, he did not refer to any statutory language or cite to a single regulation governing the FMLA.  Second, like the agreement in *Coppinger*, the CBA did not

give the arbitrator the right to decide FMLA claims. The CBA empowered the arbitrator to enforce the contract, but specifically prohibited the arbitrator from ruling on anything beyond the four corners of the document. A. 75, 77.

### 2. The Arbitral Standards Were Less Protective Than Those in Federal Court.

As to the third part of the analysis, the Supreme Court has held that it is inappropriate to give an earlier determination res judicata effect unless that determination was judged using the same standards. *Brown v. Felsen*, 442 U.S. 127 (1979) (superseded by statute on other grounds), though a bankruptcy decision, spoke to this issue. "If, in the course of adjudicating a state-law question, a state court should determine factual issues *using standards identical to those of* [the relevant statute], then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court." *Id.* at 139 n. 10 (emphasis added).

Here, the procedures and standards differed significantly from the protections Siddiqua would receive from federal court, and therefore, the arbitration should not preclude the instant claim. Most significantly, the arbitrator utilized an entirely different standard in reviewing Siddiqua's case than would be used in federal court. He did not engage in a burden-shifting analysis or determine if she had established a prima facie case, did not reference the federal regulations

18

governing FMLA leave, and offered the State a level of deference that is inappropriate in federal FMLA cases.

In order to establish a prima facie case of FMLA interference, a plaintiff simply must demonstrate: "(1) that [s]he is an eligible employee under the FMLA; (2) that defendant is an employer as defined under FMLA; (3) that [s]he was entitled to take leave under the FMLA; (4) that [s]he gave notice to the defendant of h[er] intention to take leave; and (5) that [s]he was denied benefits to which [s]he was entitled under the FMLA." *Achille v. Chestnut Ridge Transp., Inc.*, 584 Fed. Appx. 20, 21 (2d Cir. 2014); *see also Wanamaker v. Westport Bd. Of Educ.*, 899 F.Supp.2d 193, 205 (D. Ct. 2012) (noting that district courts have been consistent in analyzing prima facie claims).

To establish a prima facia case of FMLA retaliation, a plaintiff must establish that (1) "he exercised rights protected under the FMLA," (2) "he was qualified for his position," (3) "he suffered an adverse employment action," and (4) "the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004). If the Plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. *See Knox v. Town of Southeast*, 599 Fed. Appx. 411, 413-414 (2d Cir. 2015); *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). Then, the plaintiff has an

19

opportunity to show that the defendant's explanations are pretext for a true discriminatory motive. *Id.*

Here, the arbitrator did not engage in the *McDonnell Douglas* burden shifting analysis. Siddiqua provided ample evidence that she gave notice to her employer of her intention to take leave, A. 52-53, yet he did not even determine whether Siddiqua established a prima facie case of interference or retaliation. In federal court, that evidence would have established a prima facie case of interference and retaliation. The burden would have then shifted to the State to articulate a legitimate reason for the discipline.

Instead of following this analysis, which offers the plaintiff a certain level of protection, the arbitrator failed to articulate any process or explanation as to how he came to his decision. Notably, he neglected to reference the language of the FMLA, found at 29 U.S.C. §2601, or the Code of Federal Regulations, which contains regulations that establish uniform protections to plaintiffs and guide federal courts in their decision making process. 29 C.F.R 825.

Additionally, the Arbitrator offered the State a level of deference that would have been inappropriate in a judicial setting. He judged the State's actions by reasoning that "[a] reasonable Employer could draw the conclusion that she was 'gaming' the system" A. 56, and stated that "the question is whether there is a competent, preponderant evidence of guilt." A. 58. The arbitrator admitted that he

20

thought that the evidence of prior attendance problems did not "meet the standard of 'pattern evidence' sufficient to buttress its case relating to that charge," but giving deference to the employer, stated that "it would not shock me if Employer would draw a different conclusion regardless of past history." A. 57. This deference to an employer, while acceptable in arbitration, is inappropriate when determining whether a party's FMLA rights have been violated.

Because there is a question of fact as to whether the standards the arbitrator used would have been the same as those required in federal court, res judicata is not applicable. *See Brown*, 442 U.S. at 139 n. 10.

### 3.    The Arbitrator Would Not Have Been Able to Offer Siddiqua Adequate Relief.

As to the fourth factor, res judicata is inappropriate where the prior decision-maker could not have offered the plaintiff the same level of relief. *Coppinger*, 861 F.2d at 38. Here, the arbitrator would not have been able to offer Siddiqua what she would have been entitled to in federal court. According to the CBA, an arbitrator has the power to:

> devise an appropriate penalty including, but not limited to, ordering reinstatement and back pay for all or part of any period of suspension. The amount of any back pay award shall be reduced by the amount of any unemployment compensation benefits and any outside earnings paid to the employee during the time period for which back pay is awarded.

A. 73.

21

In federal court, however, a plaintiff is entitled to much more if it is found that her employer violated her FMLA rights. In addition to back pay, plaintiffs who are successful under the FMLA may be entitled to employment benefits and other compensation lost because of the violation. 29 C.F.R. 825.400(c). A prevailing plaintiff may be entitled to interest, liquidated damages, attorney's fees, expert witness fees, and costs of litigation. *Id.* None of these remedies were available under the CBA, and therefore, res judicata does not apply.

**B.  THE DOCTRINE OF COLLATERAL ESTOPPEL DOES NOT PRECLUDE SIDDIQUA FROM FILING HER CLAIMS IN FEDERAL COURT.**

Collateral estoppel is a related, but distinct, doctrine. "'Under collateral estoppel, once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue on a different cause of action between the same parties.'" *Benjamin v. Traffic Exec. Ass'n Eastern R.R.*, 869 F.2d 107, 111 (2d Cir. 1989). In *Benjamin v. Traffic Executive Association Eastern Railroads*, the plaintiffs agreed to arbitrate the question of whether they were entitled to benefits under the Staggers Act, but did not waive their right to bring other claims in federal court. *Id.* at 109. The arbitrator found that the plaintiffs were not eligible for benefits under the Staggers Act because they did not qualify as "rate bureau employees." *Id.* When the remaining claims were brought in federal court, the district court held that because the arbitrator had already

determined that the plaintiffs were not rate bureau employees, it was collaterally estopped from deciding the issue.  *Id.*

In its opinion, the *Benjamin* court spent considerable time explaining the difference between its holding and the one in *Coppinger.  Coppinger*, as discussed above, involved the question of whether a Fourth Amendment claim could be precluded by an arbitration decision.  The *Benjamin* court noted that *Coppinger* held that the arbitration decision was not res judicata because, otherwise, the district court would be prohibited from ruling on matters that had never been argued or decided.  *Id.* at 112.  "To have granted the arbitration decision res judicata effect would have taken a determination regarding one right and improperly allowed that to dictate the determination regarding another right."  *Id.*

The *Benjamin* court noted that the two opinions were not incongruous.  It listed several reasons for finding that the *Coppinger* plaintiffs could pursue their claim in federal court, while the *Benjamin* plaintiffs were precluded from doing so.  Most notably, the *Benjamin* court distinguished *Coppinger* because there, (1) the arbitrator's authority concerned only contractual, and not constitutional or statutory rights, and (2) the *Coppinger* arbitrator lacked the authority to provide adequate relief.  *Id.*  The *Benjamin* court held that collateral estoppel was appropriate in its

own factual scenario because "there is no question regarding the arbitrators' authority." *Id.* at 114.[1]

Likewise, in *14 Penn Plaza*, the question of whether a plaintiff was collaterally estopped from asserting a claim hinged on whether the arbitrator had the authority, under an arbitration agreement, to decide a statutory claim. There, the Court noted that res judicata or collateral estoppel do not apply where a collective bargaining agreement did not give the arbitrator the power to determine statutory claims. The Court discussed favorably the holding in *Gardner-Denver*, finding that "whether the legal theory of preclusion advanced by the employer rested on 'the doctrines of election of remedies' or was recast 'as resting instead on the doctrine of equitable estoppel and on themes of res judicata and collateral estoppel,' ... it could not prevail in light of the collective-bargaining agreement's failure to address arbitration of Title VII claims. See [*Gardner-Denver*]*, at 46, n. 6, 94 S. Ct. 1011, 39 L. Ed. 2d 147* ("[W]e hold that the federal policy favoring arbitration does not establish that an arbitrator's resolution of a *contractual* claim is

---

[1] In its Reply Brief in Further Support of the Motion to Dismiss, the State contended that "Plaintiff's argument that the arbitrator lacked the authority to decide statutory discrimination claims applies only with respect to the res judicata defense. . . . Plaintiff's assertion that the arbitrator lacked the power to decide FMLA claims makes no sense in the collateral estoppel context, because whether or not the arbitrator had the authority to decide FMLA claims is immaterial to the collateral estoppel analysis." A. 84-85. This reasoning was adopted by the district court, A. 96, but is in direct contrast to *Benjamin*'s holding that an arbitrator's authority, or lack thereof, to decide a claim was relevant to the question of collateral estoppel.

dispositive of a statutory claim under Title VII" (emphasis added))." *14 Penn Plaza*, 556 U.S. at 262.

Here, there is a question of fact as to the arbitrator's authority to rule on the FMLA claim, and Siddiqua is eligible for relief in federal court that was not available to her under the CBA. Thus, she should not be collaterally estopped from bringing her claim, and the district court erred in granting the State's Motion to Dismiss.

## III.  THE NEW YORK SUPREME COURT NEVER DECIDED THE ISSUE OF WHETHER SIDDIQUA'S FMLA RIGHTS WERE VIOLATED.

At the district court level, the State argued that Siddiqua had gotten multiple chances to litigate the denial of her FMLA rights because a state court had affirmed the arbitration decision. A. 19. The district court adopted this reasoning, but this is simply not the case. Although she did petition the New York State Supreme Court to vacate the arbitration award, the Supreme Court decided the motion on a procedural issue, holding that Siddiqua did not properly effectuate service. A. 25. Although it engaged in a limited review of the case, it was only to determine whether, in the interests of justice, the court should waive untimely service. A. 25.

In analyzing the "interests of justice," the court found that Siddiqua failed to demonstrate a meritorious cause of action. A. 27. It is important to note that the

25

question the court posed was whether her claim that the arbitration award should be vacated was meritorious, and not whether her FMLA claims were meritorious. A. 27.  This is an important distinction because "'arbitration awards are subject to very limited review.'"  *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997).  A court may only vacate an arbitration award where "the arbitrator[] exceeded his powers," as defined in the arbitration agreement, 9 U.S.C. §10(a)(4), or where the arbitrator acts with a "manifest disregard of the law."  *Willemijn*, 103 F.3d at 12.  The court never addressed the issue of whether the arbitrator had the right to rule on Siddiqua's FMLA claims because that was not yet at issue.

The court found that Siddiqua's motion to overturn the arbitration award was not meritorious, and therefore the interests of justice did not justify waiving untimely service.  It never addressed the substantive issue of whether Siddiqua's FMLA rights were violated.  To deny her the chance to bring these claims in federal court is to renounce her FMLA rights.

## IV.   THE DISTRICT COURT ERRED IN NEVER ADDRESSING APPELLANT'S LEGAL ARGUMENTS.

A district court has an obligation, in making its decisions, to articulate some analysis in order to guide the appellate court in its review.  *See Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 360 (2d Cir. 2000).  Here, however, the district court did not offer any analysis as to the merits of the Siddiqua's

26

arguments. First, the district court spent thirty percent of the opinion discussing the governing legal standard, focusing exclusively on the appropriate criteria for when there is a challenge to the sufficiency of the pleading—an issue which was in no way relevant to the motion at hand.

Second, the district court did not address any of the complex precedent cited by Siddiqua. Instead, the district court simply said that it accepted each of the State's arguments "for the reasons stated in its memoranda of law." A. 96. Adding to this, the court made three points. First, it ruled that the arbitration decision could be construed as part of the Complaint—an issue that Siddiqua never contested. A. 96. Second, the court laid out the facts that it relied upon, including the fact that Siddiqua had an opportunity to testify on her own behalf and that the decision mentioned the FMLA multiple times. A. 96-97. Siddiqua does not dispute those specific facts, but notes that the district court never addressed the main issue in the case, which was extensively briefed—whether the arbitrator had the power to rule on the FMLA claim. A. 34-43. The third statement that the district court made was that it relied upon the preclusive effect of the New York State Supreme Court decision. A. 97. That decision was based on a different legal standard, as discussed above, yet the court never addressed that discrepancy.

Because the District Court never addressed the substance of any of Siddiqua's arguments, the motion to dismiss was granted in error.

27

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests an Order reversing the district court's dismissal of the complaint in this matter, together with such other and further relief as the Court deems just and proper.

Dated: October 14, 2015

/s/Meredith A. Moriarty

SMITH HOKE, PLLC
By: Meredith A. Moriarty, Esq.
By: John J. Hoke, Esq.
Attorneys for Plaintiff
7 Southwoods Blvd.
Albany, New York 12211
Tel.: (518) 489-5600
Fax: (518) 641-1286

# 15-2702-cv

## United States Court of Appeals for the Second Circuit

---

**JESMAIN SIDDIQUA,**

**Plaintiff-Appellant,**

v.

**NEW YORK STATE DEPARTMENT OF HEALTH,**

**Defendant-Appellee.**

---

**On Appeal from the United States District Court
for the Northern District of New York**

---

## CERTIFICATE OF COMPLIANCE

The undersigned attorney, Meredith A. Moriarty, hereby certifies that this brief complies with the type-volume limitations of FRAP 32(a)(7). According to the word processing system used by this office, this brief, exclusive of the title page, table of contents, table of citations, statement with respect to oral argument, any addendum containing statutes, rules or regulations, and any certificates of counsel, contains 6,506 words.

/s/Meredith A. Moriarty
Meredith A. Moriarty, Esq.
Smith Hoke PLLC
Attorneys for Plaintiff
7 Southwoods Blvd.
Albany, New York 12211
Tel.: (518) 489-5600
Fax: (518) 641-1286